Elva LOCKHART

v.

FIRESTONE TIRE & RUBBER CO. et al.

Civ. A. No. 77–0586–R.

United States District Court, E. D. Virginia, Richmond Division.

June 16, 1978.

---

Robert P. Geary, Richmond, Va., for plaintiff.

Paul A. Gregory, Jr., Hopewell, Va., J. Robert Brame, III, Richmond, Va., for defendants.

## MEMORANDUM

WARRINER, District Judge.

All parties in the above-styled case have agreed that the Court should determine the merits of the case on the basis of the stipulation of facts, deposition of plaintiff, affidavits, and answers to interrogatories. The parties agree, and the Court concurs, that there exists no genuine issue of any material fact in this matter.

A summary of the facts as set forth in the stipulation might be helpful. Plaintiff Lockhart, a white adult female, was hired by Firestone in its Hopewell, Virginia, facility on 11 September 1967 as a drawtwist operator in the Nytelle Drawtwist Department. Since 1961, under the provisions of an agreement between Firestone and the employees' collective bargaining agent, Firestone employees at Hopewell have had various aspects of their employment, including promotions, demotions, and reductions in force determined in accordance with departmental seniority. Plant seniority determined other benefits, such as vacations, layoffs, and re-employment, and was used when departmental seniority was equal or not relevant. Although the contract was initially negotiated with District 50 of the United Mine Workers, it was continued with Local 900 of the United Rubber Workers. Thus, the departmental seniority program now in effect is substantially the program in effect in 1961. Accordingly, plaintiff began accumulating departmental seniority in the Nytelle Drawtwist Department as well as plant seniority upon her initial hiring in 1967.

In October of 1973 Firestone and the Equal Employment Opportunity Commission (hereinafter "EEOC") entered into a conciliation agreement whereby Firestone agreed to take certain steps to increase the representation of females and blacks in certain departments of the Hopewell facility. The validity of this agreement is not before the Court. After the conciliation agreement Local Union 900 and Firestone entered into a memorandum of agreement whereby Local Union 900 and Firestone agreed to provide remedial seniority to certain minority employees hired prior to 1 April 1972 covered by the EEOC conciliation agreement. The memorandum of agreement provided that the affected employees could utilize plant seniority rather than departmental seniority in transferring to certain departments and in future promotions within those departments, provided that the affected employee complied with the other portions of the memorandum of agreement. Pursuant to the memorandum of agreement, several minority employees transferred into the Polyester Beaming Department and such employees were permitted to utilize plant seniority rather than departmental seniority in bidding on vacancies within the Polyester Beaming Department.

Due to business conditions Firestone decided to shut down the Nytelle Department effective 31 December 1973. Prior to the shutdown, all employees in the Nytelle Department were given an opportunity to transfer to other departments. Pursuant to this procedure the plaintiff elected to transfer to the Polyester Beaming Department.

When the plaintiff was transferred to the Polyester Beaming Department in December of 1973, she was employed in the utility and service classification and was assigned a new departmental seniority date of 31 December 1973. Although the record is silent on whether the plaintiff attempted to qualify under the above-mentioned memorandum of agreement regarding seniority rights for minorities, the Court assumes that if she did she was not successful.

In February of 1974 the plaintiff was promoted to the beamer helper classification within the Polyester Beaming Department. On 20 July 1977 the plaintiff was promoted to the classification of beamer operator, the highest rated hourly position in the Polyester Beaming Department. The promotions to beamer helper and beamer operator were made pursuant to plaintiff's Polyester Beaming Department seniority.

In February of 1975 during negotiations between Local Union 900 and Firestone, Firestone proposed that plant seniority be the controlling factor in the selection of employees for promotions, demotions and layoffs. Local Union 900 rejected this proposal and sought to retain the departmental seniority system that had been in effect since 1961. The departmental seniority system was retained and made a part of the new collective bargaining agreement and is part of the agreement now in effect.

On or about 23 February 1976 plaintiff filed a charge with the EEOC alleging that the departmental seniority system contained in the agreement between Firestone and Local Union 900 discriminated against her on the basis of her sex. More specifically, plaintiff alleged that when the Nytelle Department was shut down effective 31 December 1973, she was required to transfer to another department and thereby lost accumulated departmental seniority. Since future promotions within the Polyester Beaming would be based on departmental seniority, plaintiff alleged that the departmental seniority system was unfair because employees who had less plant seniority but more departmental seniority than plaintiff would receive promotions ahead of plaintiff. The plaintiff contended that plant seniority should determine promotions and demotions.

On or about 2 December 1976 plaintiff was advised by the EEOC that her charge was being dismissed because she was not an aggrieved person within the meaning of Title VII of the Civil Rights Act of 1964. Plaintiff was further advised by the EEOC that her charge was being dismissed because it was not filed within 180 days of the alleged unlawful employment practice.

On 5 August 1977 plaintiff notified the Department of Labor of her intent to file suit against Firestone under the Age Discrimination Act of 1973.

If plant seniority rather than departmental seniority controlled promotions within Polyester Beaming, plaintiff would have received a promotion to beamer operator in March of 1975 rather than July of 1977.

Pursuant to the departmental seniority listing effective 11 January 1978 for the Polyester Beaming Department, there are six females and seven males who have greater departmental seniority but less plant seniority than plaintiff.

Based on the above facts, it is clear to the Court that the act of which plaintiff complains occurred on 31 December 1973, the date on which she was transferred to the Polyester Beaming Department. It was at this time that her loss of seniority occurred. It thus appears that the Court lacks jurisdiction in that plaintiff failed to comply with the mandatory statutory requirements for the filing either of a Title VII action or an Age Discrimination in Employment action. Her complaint is that the departmental seniority system, as opposed to plant wide seniority, discriminates against plaintiff and others similarly situated on the basis of age and also on the basis of sex.

While it is true that the departmental seniority system has been continuously in operation since 1961 and continues now to be in operation, if it is discriminatory on account of either age or sex such discrimination impacted upon plaintiff upon her transfer to the Polyester Beaming Department in December of 1973. Though her seniority has continued to be less than that which she enjoyed in her previous department, the time that she lost seniority was the definite, fixed date of 31 December 1973. There is no question that plaintiff was cognizant of the fact that she then lost her seniority as a result of the departmental seniority system, but she filed no administrative charge of sex discrimination with the EEOC until 23 February 1976 and she

filed no notice with the Department of Labor charging age discrimination until 5 August 1977. Such charges being well beyond the statutory requirements in both cases [1] this Court has no jurisdiction to hear and determine the sex and age discrimination complaints.

Plaintiff argues that the alleged discriminatory practice is "continuing in nature" and hence the 180 day hurdle has been circumvented. Prior to *United Air Lines v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), the plaintiff's argument may have been successful. Under the mandate of *Evans*, however, the plaintiff's argument must fail.

In *Evans*, the Supreme Court was confronted with a female air flight attendant who had failed to file a timely claim against petitioner airline for violation of Title VII when her employment was terminated in 1968 pursuant to a later invalidated no-marriage policy. The Supreme Court held that the airline did not commit a present, continuing violation of Title VII by *refusing* to credit respondent, after rehiring her in 1972, with pre-1972 seniority. In enunciating its holding, the Court stated the following:

> Respondent is correct in pointing out that the seniority system gives present effect to a past act of discrimination. But United was entitled to treat that past act as lawful after respondent failed to file a charge of discrimination within the 90 days then allowed by § 706(d). A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.

Respondent emphasizes the fact that she has alleged a *continuing* violation. United's seniority system does indeed have a continuing impact on her pay and fringe benefits. But the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists.

[431 U.S. at 558, 97 S.Ct. at 1889.]

Accordingly, under the above language found in *Evans*, it is clear to the Court that plaintiff's claim is not of a continuing nature since the actual *violation* occurred 31 December 1973. The Court, therefore, must dismiss this action for lack of jurisdiction.

An appropriate order shall issue.

---

1. In a Title VII case, a notice must be filed within 180 days of the alleged unlawful employment practice with the EEOC setting forth the alleged violation. 42 U.S.C. § 2000e–5(e) (1970), *as amended*, (Supp.V.1975). In a suit filed pursuant to the Age Discrimination in Employment Act, a notice must be filed within 180 days of the alleged unlawful employment practice with the Secretary of Labor. 29 U.S.C. § 626(d)(1).